NO. 07-00-0492-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MARCH 18, 2002


______________________________



LYNN STERLING HARDY
,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 183rd DISTRICT COURT OF HARRIS COUNTY;



NO. 823,267; HON. WOODROW DENSEN, PRESIDING


_______________________________



Before BOYD, C.J., QUINN and REAVIS, JJ.

 Lynn Sterling Hardy (Hardy) appeals his conviction for theft. Through five points of
error, he contends that the trial court abused its discretion in admitting various exhibits over
his hearsay objection. Furthermore, because the exhibits were inadmissible hearsay, the
trial court also denied him his constitutional right to confront and cross-examine his
accusers, he continues. We reverse the judgment.

Background


 The State indicted appellant for theft of property having a value exceeding $20,000. 
The property consisted of "dump pumps." (1) Allegedly, he converted the pumps from his
employer Hyseco, Inc. and sold them to others. Hyseco discovered that pumps were
missing and began to contact potential customers for same. At least four entities which
were contacted admitted to buying pumps from appellant. So too did they acknowledge
that the pumps appeared to them to be the property of Hyseco, after a Hyseco
representative described them.

 The evidence from which the controversy before us arose concerned State's
Exhibits 10 and 12. The former contained information given to Hyseco employees by the
company's security service. It purported to show the times at which company employees,
including appellant, entered the facility. The latter exhibit (i.e. 12) contained a letter,
addressed to the local district attorney, from an "Anthony John Payne" (Payne) of Cape
Manufacturing Engineers, Cape Town, South Africa. According to the letter, Cape
Manufacturing made the pumps in question. Therein, Payne stated:

 This fax serves to confirm that the pumps returned by the Police to Hyseco
and inspected by me on Thursday 14 October 1999 [sic] were of South
African origin. This can be confirmed by the foundry identification and cast
lot No. on the side of the Port End Cover.

 

 We have supplied these Pumps to three companies in the United States but
the Hyseco pumps can be identified by the pitch of drilled holes used to hold
on the name tag. Hyseco tag holes are 2 7/8" apart whilst the other
customer tag holes are 1 3/4" apart."


 Appellant objected to the foregoing exhibits as hearsay. So too did he argue that
they were not admissible business records within the scope of Texas Rule of Evidence
803(6). Finally, he posited that their admission would effectively deny him his constitutional
right to confront his accusers. However, the court overruled the objections and admitted
them.

Points One Through Four


 Via his first four points of error, appellant questions the admission of Exhibit 12, in
particular the Payne letter. The evidence was allegedly inadmissible because it constituted
unreliable hearsay outside the scope of any hearsay exception. Furthermore, its admission
purportedly resulted in the denial of his right to confront and cross-examine his accusers. 
We agree.

 Authority

 The applicable standard of review is one of abused discretion. As long as the trial
judge operates within the ambit of his discretion in deciding to admit or exclude evidence,
we should not disturb his decision, irrespective of what it may be. Feldman v. State, No.
73,654, 22 (Tex. Crim. App. Feb. 20, 2002); Montgomery v. State, 810 S.W.2d 372, 390
(Tex. Crim. App. 1990). In other words, decisions which come within the zone of
reasonable disagreement, when measured against pertinent law and the circumstances
before the trial court, do not evince abused discretion. Feldman v. State, No. 73,654, 22;
Montgomery v. State, 810 S.W.2d at 391.

 Next, hearsay consists of an out-of-court statement offered to prove the truth of the
matter asserted. Tex. R. Evid. 801(d); Guidry v. State, 9 S.W.3d 133, 152 (Tex. Crim. App.
1999). Moreover, its tender by the State and receipt into evidence in a criminal proceeding
implicates the Confrontation Clause of the Sixth Amendment to the United States
Constitution. Guidry v. State, 9 S.W.3d at 149. This is so because the defendant is not
afforded the opportunity to confront the out-of-court declarant. Id. Yet, that such evidence
was admitted does not automatically result in the deprivation of the constitutional right. 
Rather, error occurs when the evidence neither falls within a recognized exception to the
hearsay rule or has particularized guarantees of trustworthiness. Id. at 150; Muttoni v.
State, 25 S.W.3d 300, 305 (Tex. App.-Austin 2000, no pet.). 

 Application of Authority 

 As previously mentioned, the evidence in question encompasses a written
statement from an "Anthony John Payne" of Cape Manufacturing Engineers, Cape Town,
South Africa. Therein, he endeavors to identify pumps allegedly stolen by appellant as
those of Hyseco. He does so by describing the supposed uniqueness of the holes drilled
in them and used to affix Hyseco's label to the item. Moreover, the missive was faxed to
the local district attorney after the latter or various police officers induced Payne to create
it for use in investigating and, no doubt, prosecuting the purported theft. Finally, proving
that the items belonged to the complainant was critical to the successful prosecution of
appellant. 

 From the foregoing, it can be said that the contents of the letter represented out-of-court statements of Payne. Not only did Payne identify the pumps as belonging to Hyseco
but also his testimony was offered to prove that supposed fact. In other words, they were
offered as proof of the matter asserted. Thus, it is beyond question that they constituted
hearsay within the definition espoused by Guidry and the rules of evidence.

 Next, the State attempted to justify admission of the evidence by contending that
it fell within the business record exception to the hearsay rule, i.e. Texas Rule of Evidence
803(6). However, equally clear from the record before us is that the document was created
solely for the purpose of prosecuting criminal charges against appellant. This means that
it was made in anticipation of litigation, and, being made for that purpose, it cannot fall
within the category of a business record. Dixon v. State, 940 S.W.2d 192, 195 (Tex.
App.-San Antonio 1996, no pet.) (holding that a list of missing items was not a business
record, for purposes of the hearsay rule, because it was developed in anticipation of
litigation); see Palmer v. Hoffman, 318 U.S. 109, 112-15, 63 S. Ct. 477, 479-81, 87 L. Ed.
645 (1943) (holding that statements obtained in anticipation of litigation were not business
records); Certain Underwriters v. Sinkovich, 232 F.3d 200, 204-205 (4th cir. 2000) (holding
the same). (2) Moreover, being made in anticipation of litigation, the statement is also
inherently unreliable. Cole v. State, 839 S.W.2d 798, 809 n.9 (Tex. Crim. App. 1990). 
Given these circumstances, the two conditions upon which hearsay may be admitted
without violating a defendant's Sixth Amendment right to confront his accusers were not
met at bar. See Muttoni v. State, 25 S.W.3d at 307-308 (holding that the improper
admission of hearsay violates an accused's constitutional right to confront and examine
witnesses). Thus, the trial court erred in admitting the fax from Payne.

 Having found that the trial court's decision was wrong, we must now determine
whether it caused appellant to suffer harm. In doing so, we turn to Rule 44.2 of the Texas
Rules of Appellate Procedure. Through it, the Court of Criminal Appeals directed us to
reverse the judgment if the error was of constitutional dimension and we are unable to
hold, beyond reasonable doubt, that it did not contribute to the conviction. Tex. R. App.
Proc. 44.2(a). This requires us to assess whether "there was a reasonable possibility that
the error, either alone or in context, moved the jury from a state of nonpersuasion to one
of persuasion . . . ." (3) Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)
(emphasis supplied). In performing this task, we gauge the error's potential impact in light
of the other evidence and circumstances appearing of record. McCarthy v. State, No.
73,350, 2001 WL 1575803 (Tex. Crim. App. December 12, 2001). This does not mean
that if some other evidence exists upon which the verdict can be founded the error was
harmless. Id. Indeed, the independent evidence of guilt must be overwhelming before it
can ameliorate the mistake. Wesbrook v. State, 29 S.W.3d at 119; Muttoni v. State, 25
S.W.3d at 308. With this said, we turn to our analysis of whether the error at bar was
harmful. 

 Incremental to establishing appellant's culpability for the theft was proving that the
pumps belonged to Hyseco. As depicted in the testimony of one or more witnesses,
pumps of this ilk were not unique. Many companies made identical items. Indeed, one
witness viewed the units as common. So, in effort to establish that they belonged to
Hyseco, the State had a representative of Hyseco, Richard Wagoner, testify about how
Hyseco's items were actually unique and that ownership could be illustrated by their
uniqueness. (4) The purportedly unique characteristics consisted of the color of the paint
applied to the pumps, the foundry marks appearing thereon, the belief that Hyseco was
one of only two company's that sold the pump in the United States, and the location of rivet
holes used to mount the Hyseco tag.

 As to color, the pumps were painted blue. However, the paint was applied by the
manufacturer, not Hyseco. And, whether it was a shade unique solely to those items
bought by Hyseco for resale, the record does not say. Furthermore, Hyseco was not the
sole distributor of the particular items. At least one or two other businesses sold them. So,
whether like pumps with similar coloring could have come from sources other than Hyseco
remained disputed. 

 As to the foundry marks, they too were applied by the manufacturer, not Hyseco. 
Furthermore, each pump appeared to have the same marking. Whether that particular
marking was unique to the units sold to Hyseco or was applied to every pump sold by the
manufacturer to every other distributor also fails to appear of record. According to
Wagoner, "[t]he manufacturer would have to answer that."

 As to the number of entities that distributed the units in the United States on behalf
of Cape Manufacturing, Wagoner testified that there were only two. However, the accuracy
of his conclusion was rendered suspect by the very hearsay evidence in question. Payne
represented that Cape sold the pumps to three distributors. 

 As to the location of the rivet holes in the pump casings, Wagoner's own testimony
rendered that evidence less than definitive. He testified that the tags placed on the items
by Cape Manufacturing were done so in a specific manner. That is, the rivets were located
a certain distance from each other, and only those pumps sold to Hyseco had rivets so
spaced. Yet, under questioning, Wagoner said that he bought a pump from another Cape
Manufacturing distributor, which distributor was located in Mississippi. Furthermore, the
pump he acquired in Mississippi had rivet holes similarly spaced to those on his pumps. 
Because Wagoner had legitimately bought a pump with like holes from another distributor,
it can hardly be said that the holes were unique to items sold by Hyseco. 

 Moreover, while those who bought the pumps from appellant concluded that they
belonged to Hyseco, they did so on the basis of Wagoner's general description of same. 
They had no personal knowledge that Hyseco originally owned them. Nor could they so
conclude from merely looking at the pumps. Testimony indicated that inspection of the
items could have resulted in the identification of their manufacturer, but not their distributor. 
To this was added the testimony that several different companies made pumps identical
to those allegedly stolen, that "lots of people sell them," that they are common pumps, and
that the tags that appear on them are "about the same size."

 From the foregoing, one can say that evidence of ownership by Hyseco
(independent of that contained in the Payne hearsay letter) appeared of record. So too
may that evidence be legally sufficient to support a finding of guilt. Yet, it was founded
upon the conclusions of Wagoner regarding the uniqueness of the pumps his company
sold. And, as illustrated above, the evidence of their supposed uniqueness was short of
overwhelming. Also, to quell any further dispute regarding ownership, the State expressly
referred the jury, during closing, to the inadmissible hearsay letter of Payne. It cannot be
denied that a manufacturer's statement that something is unique to items bought by a
particular distributor has persuasive value. Given these circumstances, we are unable to
conclude, beyond reasonable doubt, that the hearsay before us did not contribute to the
jury's ultimate verdict, and this prohibits us from holding the error harmless.

 Accordingly, the judgment is reversed and the cause remanded to the trial court. (5)


 Brian Quinn

 Justice




Publish.

 

 
1. According to the record, a "dump pump" is a hydraulic pump used on dump trucks. 
2. Our court of criminal appeals has recognized that judicial opinions interpreting the Federal Rules of
Evidence are helpful in interpreting our Texas Rules of Evidence. Cole v. State, 839 S.W.2d 798, 801 (Tex.
Crim. App. 1990). This is so because our state rules are patterned after the federal rules. Id. 
3. We do not read the Court of Criminal Appeals as saying that but for the improperly admitted
evidence, there must be no evidence which could have reasonably persuaded the jury to find guilt. If this were
not so, then the mere fact that the verdict enjoys the support of legally sufficient evidence would be
determinative. Yet, we have been told time and time again, through cases such as McCarthy and Wesbrook,
that the mere existence of some independent evidence supporting guilt is not enough reason to hold error
harmless. 
4. Evidence revealed that each pump had a unique serial number. However, Hyseco did not record
the serial numbers of its pumps. So, the serial numbers were of no use in identifying the owner of the items.
5. Having held as we did regarding the admission of exhibit 12, we need not consider appellant's
other issues.



9;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Heading 1 Char";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:1;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-font-kerning:0pt;
 mso-bidi-language:EN-US;}
h2
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 2 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:2;
 font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h3
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 3 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:3;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
h4
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 4 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:4;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-style:italic;}
h5
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 5 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:5;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;}
h6
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 6 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:6;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 mso-bidi-language:EN-US;
 font-weight:normal;
 font-style:italic;}
p.MsoHeading7, li.MsoHeading7, div.MsoHeading7
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 7 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:7;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeading8, li.MsoHeading8, div.MsoHeading8
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 8 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:8;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 mso-bidi-language:EN-US;}
p.MsoHeading9, li.MsoHeading9, div.MsoHeading9
 {mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-qformat:yes;
 mso-style-link:"Heading 9 Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 mso-outline-level:9;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0408.cr%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0408.cr%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0408.cr%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0408.cr%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0408.cr%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-00408-CR; 07-10-00410-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



MAY
20, 2011

 



 

DERRICK LACY, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY;

 

NO. 1188762D, 1188765D; HONORABLE RUBEN GONZALEZ, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

ABATEMENT AND REMAND

            On
March 9, 2011, this Court received appellants motion to abate the appeals in
appellate cause numbers 07-10-00408-CR and 07-10-00410-CR to allow the trial
court to enter judgments nunc pro tunc.  In the motion, appellant contends that the
trial court orally sentenced appellant to confinement for two years in a state
jail facility, but erroneously entered judgment reflecting that appellant was
sentenced to two years confinement in the Institutional Division of the Texas
Department of Criminal Justice.  We now
abate cause numbers 07-10-00408-CR and 07-10-00410-CR and remand these causes
for further proceedings.

            The
trial courts oral pronouncement of sentence as to the convictions in these
causes was:

And with regard to the State jail felony convictions, I hereby sentence
you to two years confinement in the Institutional Division of the Texas
Department of Criminal Justice State jail facility.

 

Thus, the trial courts pronouncement
is ambiguous because it identifies the place of sentence in both the Institutional
Division and State Jail Facility.  As
such, the oral pronouncement specifies both a proper sentence (two years in a
state jail facility) and an improper sentence (two years in the Institutional
Division).  When an illegal oral sentence
is pronounced, but a valid sentence is included in the written judgment, the
valid sentence will be upheld.  See
Tufele v. State, 130 S.W.3d 267, 274 (Tex.App.Houston [14th Dist.] 2004, no
pet.).  By analogy to Tufele,
when a trial courts oral pronouncement ambiguously includes two mutually
exclusive components and one would make the sentence valid while the other
would be improper, we should uphold the portion of the pronouncement that will
make the sentence valid.  Thus, we construe
the trial courts oral pronouncement to have sentenced appellant to two years incarceration in a state jail facility.  

We now abate the appeals in cause
numbers 07-10-00408-CR and 07-10-00410-CR, and remand these cases to the
district court to conduct a hearing to determine whether the judgments reflect
the sentences the trial court orally rendered. 
See Miller v. State, 2003 Tex.App.
LEXIS 3982, at *8-*9 (Tex.App.Austin May 8, 2003)
(citing Rodriguez v. State, 42 S.W.3d 181, 186 (Tex.App.Corpus
Christi 2001, no pet.).  If the trial court
finds that the entry of the judgments in these causes were the result of
clerical error, we direct the trial court to enter nunc
pro tunc judgments to reflect the proper sentence
orally pronounced.  

The trial court shall cause the
hearing to be transcribed.  In addition,
it shall cause to be developed a supplemental clerks record containing any nunc pro tunc judgments or other
orders entered by the trial court, and a supplemental reporters record
transcribing the evidence and arguments presented at the aforementioned
hearing, if any.  Additionally, the
district court shall then file the supplemental clerks and reporters records herein
ordered with the Clerk of this Court on or before June 20, 2011.  Should further time be needed by the trial
court to perform these tasks, then same must be requested before June 20, 2011.

It is so ordered.

                                                                                                Per
Curiam

 

Do not publish.