Aaron Jason MUTTONI, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–99–00456–CR.

Court of Appeals of Texas,
Austin.

July 27, 2000.

David B. Fannin, Austin, for Appellant.

John Lasovica, Asst. Travis County Atty., Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

BEA ANN SMITH, Justice.

Appellant Aaron Jason Muttoni was convicted by a jury of the offense of theft, a Class A misdemeanor. *See* Tex. Penal Code Ann. § 31.03(a), (e) (West Supp. 2000). The trial court sentenced Muttoni to two years of community supervision. On appeal, Muttoni asserts seven points of error. Because we agree that the trial court's error in admitting hearsay evidence violated Muttoni's constitutional right to confront his accuser, we reverse the trial court's judgment and remand the cause for a new trial.

## FACTUAL BACKGROUND

Muttoni worked as a cashier at an Academy store in Austin. As part of his initial training, Muttoni received instructions on the proper procedures to be followed in providing cash refunds to customers for returned merchandise.

Appellant and four other cashiers who worked at Academy in 1997 were fired for making false refunds, or "bogus cash refund" transactions, to steal money from the store. The employees allegedly took items of merchandise off the shelves and used them to create a false refund transaction for a specific dollar amount. They would then either sign an imaginary customer's signature or enlist another employee to do so. Similarly, the employees would sign the manager's approval line or convince a manager to sign without inspecting the transaction. Finally, they would remove an amount of cash from the register equivalent to the price of the merchandise and appropriate it.

Carmine Sanguedolce, the assistant director of security for Academy stores, identified the five cashiers who performed bogus cash refunds based on employee authorization codes, register logs, and signatures on store refund slips used to document each cash refund transaction. All five employees were fired and subsequently charged with theft.

One of the terminated cashiers, Jeremy Tennell, admitted to Sanguedolce that he performed thirty-seven bogus cash refunds. Tennell also told Sanguedolce that on or about April 26, he saw Muttoni create one bogus cash refund and later take a large amount of cash from the register. Tennell's assertions were reduced to writing, and the State introduced his statement into evidence at Muttoni's trial. Tennell was not present at the trial. Although the State introduced circumstantial evidence against appellant, Tennell's statement was the only eyewitness account of Muttoni's alleged theft.

Muttoni admitted to violating store policy by allowing others to use his register, exchanging his employee authorization code with others, and signing refund slips when a customer failed to sign, but he denied performing bogus refunds to steal money. Based on the circumstantial evidence and the written statement of Tennell, Muttoni was convicted of the offense of misdemeanor theft.

## DISCUSSION

*Confrontation Clause*

■ In his second point of error, Muttoni argues that his right of confrontation was violated when the trial court admitted the written statement of Jeremy Tennell. The statement was originally admitted under the rule of optional completeness after Academy's store manager testified on cross-examination that Tennell admitted to committing bogus cash refunds.[1] In re-

1. Rule 107, the rule of optional completeness, provides: "When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on

the same subject may be inquired into by the other...." Tex.R. Evid. 107. The purpose of the rule is to correct any potentially misleading impression created when only a portion of

sponse to Muttoni's objection that Tennell's accusation of Muttoni was not germane to Tennell's admission of his own guilt, the State agreed to redact the portion of the statement implicating Muttoni. However, the trial court later admitted Tennell's entire statement, including the accusation of Muttoni, as a statement against penal interest,[2] despite Muttoni's objections based, *inter alia*, on the Confrontation Clause. Muttoni does not challenge the trial court's determination that the statement was admissible as an exception to the hearsay rule. Therefore, the issue presented is not whether Tennell's statement should have been admitted under the rules of evidence but whether its admission violated Muttoni's Sixth Amendment right of confrontation. In deciding this constitutional issue, we review the trial court's ruling *de novo*. *See Lilly v. Virginia*, 527 U.S. 116, 134, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999); *Ornelas v. United States*, 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *see also Guzman v. State*, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997).

▬▬ The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him." U.S. Const. amend. VI. Its central concern is to ensure the reliability of evidence against a defendant by subjecting it to rigorous testing in an adversarial proceeding before the trier of fact. *See Lilly*, 527 U.S. at 126, 119 S.Ct. 1887 (quoting *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)). The

right of confrontation has two principal functions. First, it affords the accused the opportunity of cross-examination—a tool used to scrutinize witnesses' statements and expose "possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness." *Long v. State*, 742 S.W.2d 302, 306 (Tex.Crim.App.1987) (quoting 5 John H. Wigmore, *Wigmore on Evidence* § 1362 (3d ed.1940)). Second, the Clause affords the right of physical confrontation, *see id.*, providing the accused an opportunity "not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 39 L.Ed. 409 (1895). With the witness physically present, the trier of fact may observe the demeanor of the witness and judge the witness's credibility not just from what is said, but from how it is said. *See Long*, 742 S.W.2d at 306. These functions are indelibly linked to the practice of excluding from evidence hearsay statements. *See id.* at 305. In fact, the right of confrontation arose from the development of the hearsay rule. *See id.*

Hearsay is an out-of-court statement, written or oral, offered in evidence to prove the truth of the matter asserted. *See* Tex.R. Evid. 801(d). Throughout its evolution, the hearsay rule has acquired numerous exceptions that rely on indicia of

---

evidence is introduced. *See Roman v. State*, 503 S.W.2d 252, 253 (Tex.Crim.App.1974). Evidence that might not otherwise be allowed is admissible to explain and clarify the matter as a whole. *See Callaway v. State*, 818 S.W.2d 816, 827 (Tex.App.—Amarillo 1991, pet. ref'd).

**2.** Rule 803(24) provides:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or

criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Tex.R. Evid. 803(24).

trustworthiness other than cross-examination. *See Long,* 742 S.W.2d at 309. Because the admission of hearsay evidence in a criminal case deprives the accused of the opportunity to test the veracity of the statement by confronting the out-of-court declarant, courts must decide whether any of these exceptions satisfy the protections of the Confrontation Clause. *See Lilly,* 527 U.S. at 126, 119 S.Ct. 1887. As early as 1895, the Supreme Court determined that the framers of the Sixth Amendment did not intend to prohibit all out-of-court statements: "Many of its [the Constitution's] provisions in the nature of a bill of rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit." *Mattox,* 156 U.S. at 243, 15 S.Ct. 337.

■■■ In *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Court held that the veracity of hearsay statements is sufficiently dependable to be admitted against an accused when (1) the evidence falls within a firmly rooted hearsay exception, or (2) it contains such "particularized guarantees of trustworthiness" that adversarial testing would be expected to add little to its reliability. *See* 448 U.S. at 66, 100 S.Ct. 2531. The first prong of *Roberts* is designed to allow the introduction of statements falling within a category of exceptions that custom confirms " 'carry special guarantees of credibility' essentially equivalent to, or greater than, those produced by the Constitution's preference for cross-examined trial testimony." *Lilly,* 527 U.S. at 128, 119 S.Ct. 1887 (quoting *White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)). The second prong suggests that some statements that do not fit into a firmly rooted hearsay exception may have other "particularized guarantees of trustworthiness" that would allow them to be admitted without offending the confrontation rights guaranteed to a criminal defendant.

■■■ Firmly rooted hearsay exceptions are those that, in light of longstanding judicial and legislative experience, rest on such a solid foundation that admission of virtually any evidence within the category comports with the substance of the constitutional protection. *See Idaho v. Wright,* 497 U.S. 805, 817, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531 (quoting *Mattox,* 156 U.S. at 244, 15 S.Ct. 337). Such statements fall within a category of hearsay "whose conditions have proven *over time* 'to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath' and cross-examination at trial." *Lilly,* 527 U.S. at 128, 119 S.Ct. 1887 (emphasis added) (quoting *Mattox,* 156 U.S. at 244, 15 S.Ct. 337); *see also White,* 502 U.S. at 355–56 & n. 8, 112 S.Ct. 736 (holding spontaneous declarations exception is firmly rooted because it is at least two centuries old, widely accepted among states, and carries substantial guarantees of trustworthiness); *Mattox,* 156 U.S. at 243–44, 15 S.Ct. 337 (holding that admission of dying declarations, which "from time immemorial . . . have been treated as competent testimony," did not offend Sixth Amendment). The common factor among these firmly rooted hearsay exceptions is recognition of their proven trustworthiness over a substantial period of time.

Muttoni's confrontational rights were not violated if Tennell's statement qualifies as a firmly rooted hearsay exception. The court of criminal appeals has held that a statement against penal interest under rule 803(24) is a firmly rooted exception to the hearsay rule. *See Dewberry v. State,* 4 S.W.3d 735, 753 (Tex.Crim.App.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000); *Guidry v. State,* 9 S.W.3d 133, 150 (Tex.Crim.App.1999), *petition for cert. filed* (May 9, 2000). *But see Lilly,* 527 U.S. at 128, 119 S.Ct. 1887 ("[S]imple categorization of a statement as a 'declaration against penal interest . . . defines too large a class for meaningful Confrontation Clause analysis.' ") (quoting *Lee v. Illinois,* 476 U.S. 530, 544 n. 5, 106

S.Ct. 2056, 90 L.Ed.2d 514 (1986)).[3] The trial court admitted Tennell's written remarks as a statement against penal interest, but we are not bound by the trial court's ruling.

Included in the written account of Tennell's interview with Sanguedolce is the following accusation of Muttoni:

> I was at work operating a customer service register[.] [A]lso present was customer service cashier Aaron Muttoni. It was then when I saw Aaron Muttoni doing what I recognized to be a bogus refund.... I knew that the transaction that I saw Aaron Muttoni [sic] was a refund transaction because of the way the register issues receipts and I saw the store copy of the refund transaction. Later that same day when Aaron Muttoni was closing out his register and counting down his cash I saw Aaron Muttoni place a large quantity of cash into his pocket. Aaron was attempting to conceal this act.

The statement also includes self-inculpatory assertions, in which Tennell admitted that he too performed many bogus cash refunds.

The court of criminal appeals has recognized that rule 803(24) provides an exception to the hearsay rule for a statement against the *declarant's* penal interest, but it does not provide an exception for a declarant's statement which is against someone else's interest, such as a third party, a co-actor, or a co-defendant. *See Cofield v. State*, 891 S.W.2d 952, 955 (Tex. Crim.App.1994). In reaching this holding, the court relied on *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), in which the Supreme Court concluded that the fact that a person has made a broadly self-inculpatory statement does not make other portions of the statement more credible. *See* 512 U.S. at 599, 114 S.Ct. 2431. The Supreme Court

also held that a statement is not self-inculpatory simply because it is part of a fuller confession, and "this is especially true when the statement implicates *someone else.*" *Id.* at 601, 114 S.Ct. 2431 (emphasis added). In relying on this Supreme Court holding, the court of criminal appeals acknowledged that the Supreme Court was interpreting the federal rule, but added that the Texas version of the rule contains similar language, and it therefore found the Supreme Court's reasoning and analysis persuasive. *See Cofield*, 891 S.W.2d at 956.

■ Thus, to qualify as a statement against penal interest, the portion of Tennell's statement implicating Muttoni must be self-inculpatory; that is, it must be against *Tennell's* interest. *See Guidry*, 9 S.W.3d at 149. Tennell's confession regarding his own bogus refunds is self-inculpatory, but the portion implicating Muttoni is not adverse to Tennell's interest.[4] The trial court correctly redacted that portion of the statement when the State offered it into evidence under the rule of optional completeness. The same redaction was necessary when the State urged its admission as a statement against penal interest. Tennell's account of Muttoni's theft does not qualify as a firmly rooted exception to the hearsay rule and violates Muttoni's confrontation rights under the first prong of *Roberts.*

■ When a hearsay statement does not fall into a firmly rooted exception, evidence that it bears other "particularized guarantees of trustworthiness" may make it sufficiently reliable to satisfy the Confrontation Clause. *See Roberts*, 448 U.S. at 66, 100 S.Ct. 2531. In analyzing the admission of Tennell's statement under the second prong in *Roberts*, we independently review the government's proffered guarantees of trustworthiness. *See Lilly*, 527 U.S. at 134, 119 S.Ct. 1887. In this case,

---

**3.** Although a majority of the Court joined in the opinion announced in *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), only four justices concurred with this portion of the Court's holding.

**4.** Indeed, implicating others could be considered conduct that would be to *Tennell's benefit* rather than against his *penal* interest.

we hold they do not satisfy the demands of the Confrontation Clause.

■■■■■ The "residual trustworthiness test" applies in exceptional cases "when a court can be confident . . . that 'the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility.'" *Lilly*, 527 U.S. at 134, 119 S.Ct. 1887 (quoting *Wright*, 497 U.S. at 820, 110 S.Ct. 3139). In evaluating the trustworthiness of hearsay evidence, a court may consider only those circumstances that surround the making of the statement and that render the declarant particularly worthy of belief. *See Wright*, 497 U.S. at 819, 110 S.Ct. 3139. Other evidence admitted at trial cannot be used to corroborate the veracity of the hearsay or to support a claim that the statement bears the requisite guarantees of trustworthiness. *See Lilly*, 527 U.S. at 135, 119 S.Ct. 1887 (State may not bootstrap on trustworthiness of other evidence).

■■■■■ A statement made by a nontestifying declarant that inculpates another, such as Tennell's statement accusing Muttoni of theft, is "presumptively unreliable" and unlikely to bear the particularized guarantees of trustworthiness that would vouchsafe its reliability. *See id.* at 131, 119 S.Ct. 1887.[5] The inherent suspicion surrounding such a statement stems from "the basic understanding that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination." *Lee*, 476 U.S. at 541, 106 S.Ct. 2056. One defendant who accuses another may stand to gain something even without an express offer of lenience. *See Lilly*, 527 U.S. at 136, 119 S.Ct. 1887. The declarant may "point the finger" at others in order to spread the blame, curry favor with authorities, avenge himself, or divert attention to another to mitigate the appearance of his own culpability. *See Lee*, 476 U.S. at 545, 106 S.Ct. 2056. Statements that shift *or spread* blame to another defendant are ordinarily untrustworthy precisely because they are *no*t unambiguously adverse to the declarant's penal interest, but instead are likely to be attempts to minimize his culpability. *See Lilly*, 527 U.S. at 132, 119 S.Ct. 1887 (quoting *Lee*, 476 U.S. at 552–53, 106 S.Ct. 2056 (Blackmun, J., dissenting)).[6]

While the presumption of unreliability may be rebutted, in this case the State failed to overcome its heavy burden. *See Guidry*, 9 S.W.3d at 150 (affirmative reason arising from circumstances in which statement was made must exist to provide basis for rebutting presumption) (quoting *Wright*, 497 U.S. at 821, 110 S.Ct. 3139); *Chavez v. State*, 6 S.W.3d 56, 62 (Tex. App.—San Antonio 1999, pet. ref'd). A review of the record indicates that the circumstances surrounding Tennell's statement and the setting in which he made it do not overcome its inherent unreliability.

---

5. The Court in *Lilly* identified three types of statements "against penal interest." Such statements are offered into evidence: (1) as voluntary admissions against the declarant; (2) as exculpatory evidence offered by a defendant who claims that the declarant committed, or was involved in, the offense; and (3) as evidence offered by the prosecution to establish the guilt of an alleged accomplice of the declarant. *See Lilly*, 527 U.S. at 128–31, 119 S.Ct. 1887. This third category of statements against penal interest is "presumptively suspect," even when the declarant incriminates himself together with the accomplice. *Lee v. Illinois*, 476 U.S. 530, 541, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); *see Lilly*, 527 U.S. at 131, 119 S.Ct. 1887.

6. We note that in *Lilly*, the statement at issue was made by an accomplice to the crime for which the defendant was tried, and in *Lee*, a co-defendant's statement was at issue. Here, Tennell is not an accomplice to the theft for which Muttoni was charged, nor is he a co-defendant. However, Tennell was a fellow wrong-doer and in a position in which he stood to gain by spreading the blame. He was subject to the same potential motives that make a statement such as his inherently suspect. *See Lee*, 476 U.S. at 541, 545, 106 S.Ct. 2056.

Tennell's accusation of Muttoni did not fall within *any* exception to the hearsay rule. It was not a spontaneous statement; in fact, Tennell made the statement while under interrogation by his employer's security officer. At the time of the interview, Tennell stood to lose his job and faced criminal charges. During his interview with Sanguedolce, Tennell accused several other fellow employees of performing bogus cash refunds, suggesting that Tennell may have been attempting to mitigate his own culpability by spreading the blame among others. We conclude that Tennell's statement does not have the particularized guarantees of trustworthiness that would satisfy the Sixth Amendment. We sustain Muttoni's complaint that the admission of Tennell's eyewitness accusation violates appellant's right of confrontation.

### Harm Analysis

■ The admission of Tennell's accusation is a constitutional error that requires a harm analysis. *See Evans v. State*, 534 S.W.2d 707, 710–11 (Tex.Crim.App.1976); *Tate v. State* 988 S.W.2d 887, 890 (Tex. App.—Austin 1999, pet. ref'd); *see also Rose v. Clark*, 478 U.S. 570, 582, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). In the case of a constitutional error, a court of appeals must reverse a judgment of conviction and remand the cause for a new trial unless it determines beyond a reasonable doubt that the error did not contribute to the conviction. *See* Tex.R.App. P. 44.2(a); *Tate*, 988 S.W.2d at 889. If, without the erroneously admitted evidence, the record contains overwhelming evidence of guilt, then the error is harmless beyond a reasonable doubt. *See Guidry*, 9 S.W.3d at 151–52.

■ Although the State presented circumstantial evidence, Tennell's account was the only eye-witness evidence implicating Muttoni. Due to his own involvement in the criminal activity and his potential to spread blame, Tennell's statement is less credible than ordinary hearsay evidence. *See Lilly*, 527 U.S. at 131, 119 S.Ct. 1887. However, because the account

was mixed with Tennell's own self-inculpatory statements, the jury may have been more persuaded by this eyewitness account than by the less persuasive business records here. "One of the most effective ways to lie is to mix falsehood with truth . . . ." *Id.* at 132, 119 S.Ct. 1887 (quoting *Williamson*, 512 U.S. at 599–601, 114 S.Ct. 2431). Although circumstantial evidence is sufficient to convict a defendant, the deceptively persuasive nature of Tennell's accusation convinces us that there is more than a reasonable possibility that it contributed to Muttoni's conviction. We therefore hold that the error was not harmless.

### Sufficiency of Evidence

■ In his third point of error, Muttoni contends that because Tennell's statement was improperly admitted into evidence in violation of his Sixth Amendment right of confrontation, the State failed to produce legally sufficient evidence to support a conviction.

■ To determine the legal sufficiency of the evidence to support a criminal conviction, we review *all* the evidence in the light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Staley v. State*, 887 S.W.2d 885, 888 (Tex.Crim.App.1994). In conducting our review, this Court must consider all evidence in the record, whether admissible or inadmissible. *See Dewberry*, 4 S.W.3d at 740. Any inconsistencies in the evidence should be resolved in favor of the verdict. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). This standard of review is the same for both direct and circumstantial evidence. *See Green v. State*, 840 S.W.2d 394, 401 (Tex.Crim.App. 1992). If, after a review of all the evidence, this Court determines that no rational trier of fact could find guilt beyond a reasonable doubt, we must reverse the conviction and render a judgment of acquittal. *See Burks v. United States*, 437

U.S. 1, 17–18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 24, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

In addition to Tennell's eyewitness account, the State adduced considerable circumstantial evidence against Muttoni, including business records, inventory data, and "bogus cash refund" documents allegedly bearing Muttoni's signature. In light of the fact that the record includes this circumstantial evidence and that we must consider all evidence in the record, Muttoni's legal sufficiency argument must fail. We hold that the evidence presented at trial was legally sufficient to support Muttoni's conviction for theft.

## CONCLUSION

We hold that the trial court's admission of Tennell's statement as a statement against penal interest violated Muttoni's constitutional right of confrontation. Because we conclude this error was not harmless, we reverse the trial court's judgment and remand the cause for a new trial.