NO. 07-00-0492-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 18, 2002
_____

LYNN STERLING HARDY,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 183rd DISTRICT COURT OF HARRIS COUNTY;

NO. 823,267; HON. WOODROW DENSEN, PRESIDING
_____

Before BOYD, C.J., QUINN and REAVIS, JJ.

Lynn Sterling Hardy (Hardy) appeals his conviction for theft. Through five points of error, he contends that the trial court abused its discretion in admitting various exhibits over his hearsay objection. Furthermore, because the exhibits were inadmissible hearsay, the trial court also denied him his constitutional right to confront and cross-examine his accusers, he continues. We reverse the judgment.

## *Background*

The State indicted appellant for theft of property having a value exceeding $20,000. The property consisted of "dump pumps."[1] Allegedly, he converted the pumps from his employer Hyseco, Inc. and sold them to others. Hyseco discovered that pumps were missing and began to contact potential customers for same. At least four entities which were contacted admitted to buying pumps from appellant. So too did they acknowledge that the pumps appeared to them to be the property of Hyseco, after a Hyseco representative described them.

The evidence from which the controversy before us arose concerned State's Exhibits 10 and 12. The former contained information given to Hyseco employees by the company's security service. It purported to show the times at which company employees, including appellant, entered the facility. The latter exhibit (*i.e.* 12) contained a letter, addressed to the local district attorney, from an "Anthony John Payne" (Payne) of Cape Manufacturing Engineers, Cape Town, South Africa. According to the letter, Cape Manufacturing made the pumps in question. Therein, Payne stated:

> This fax serves to confirm that the pumps returned by the Police to Hyseco and inspected by me on Thursday 14 October 1999 [sic] were of South African origin. This can be confirmed by the foundry identification and cast lot No. on the side of the Port End Cover.
>
> We have supplied these Pumps to three companies in the United States but the Hyseco pumps can be identified by the pitch of drilled holes used to hold on the name tag. Hyseco tag holes are 2 7/8" apart whilst the other customer tag holes are 1 3/4" apart."

---

[1]According to the record, a "dump pump" is a hydraulic pump used on dump trucks.

Appellant objected to the foregoing exhibits as hearsay. So too did he argue that they were not admissible business records within the scope of Texas Rule of Evidence 803(6). Finally, he posited that their admission would effectively deny him his constitutional right to confront his accusers. However, the court overruled the objections and admitted them.

### *Points One Through Four*

Via his first four points of error, appellant questions the admission of Exhibit 12, in particular the Payne letter. The evidence was allegedly inadmissible because it constituted unreliable hearsay outside the scope of any hearsay exception. Furthermore, its admission purportedly resulted in the denial of his right to confront and cross-examine his accusers. We agree.

*Authority*

The applicable standard of review is one of abused discretion. As long as the trial judge operates within the ambit of his discretion in deciding to admit or exclude evidence, we should not disturb his decision, irrespective of what it may be. *Feldman v. State*, No. 73,654, 22 (Tex. Crim. App. Feb. 20, 2002); *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990). In other words, decisions which come within the zone of reasonable disagreement, when measured against pertinent law and the circumstances before the trial court, do not evince abused discretion. *Feldman v. State*, No. 73,654, 22; *Montgomery v. State*, 810 S.W.2d at 391.

Next, hearsay consists of an out-of-court statement offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d); *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App.

3

1999).  Moreover, its tender by the State and receipt into evidence in a criminal proceeding implicates the Confrontation Clause of the Sixth Amendment to the United States Constitution.  *Guidry v. State*, 9 S.W.3d at 149.  This is so because the defendant is not afforded the opportunity to confront the out-of-court declarant.  *Id.*  Yet, that such evidence was admitted does not automatically result in the deprivation of the constitutional right.  Rather, error occurs when the evidence neither falls within a recognized exception to the hearsay rule or has particularized guarantees of trustworthiness.  *Id.* at 150; *Muttoni v. State*, 25 S.W.3d 300, 305 (Tex. App.–Austin 2000, no pet.).

*Application of Authority*

As previously mentioned, the evidence in question encompasses a written statement from an "Anthony John Payne" of Cape Manufacturing Engineers, Cape Town, South Africa.  Therein, he endeavors to identify pumps allegedly stolen by appellant as those of Hyseco.  He does so by describing the supposed uniqueness of the holes drilled in them and used to affix Hyseco's label to the item.  Moreover, the missive was faxed to the local district attorney after the latter or various police officers induced Payne to create it for use in investigating and, no doubt, prosecuting the purported theft.  Finally, proving that the items belonged to the complainant was critical to the successful prosecution of appellant.

From the foregoing, it can be said that the contents of the letter represented out-of-court statements of Payne.  Not only did Payne identify the pumps as belonging to Hyseco but also his testimony was offered to prove that supposed fact.  In other words, they were

4

offered as proof of the matter asserted. Thus, it is beyond question that they constituted hearsay within the definition espoused by *Guidry* and the rules of evidence.

Next, the State attempted to justify admission of the evidence by contending that it fell within the business record exception to the hearsay rule, *i.e.* Texas Rule of Evidence 803(6). However, equally clear from the record before us is that the document was created solely for the purpose of prosecuting criminal charges against appellant. This means that it was made in anticipation of litigation, and, being made for that purpose, it cannot fall within the category of a business record. *Dixon v. State*, 940 S.W.2d 192, 195 (Tex. App.–San Antonio 1996, no pet.) (holding that a list of missing items was not a business record, for purposes of the hearsay rule, because it was developed in anticipation of litigation); *see Palmer v. Hoffman*, 318 U.S. 109, 112-15, 63 S. Ct. 477, 479-81, 87 L. Ed. 645 (1943) (holding that statements obtained in anticipation of litigation were not business records); *Certain Underwriters v. Sinkovich*, 232 F.3d 200, 204-205 (4th cir. 2000) (holding the same).[2] Moreover, being made in anticipation of litigation, the statement is also inherently unreliable. *Cole v. State*, 839 S.W.2d 798, 809 n.9 (Tex. Crim. App. 1990). Given these circumstances, the two conditions upon which hearsay may be admitted without violating a defendant's Sixth Amendment right to confront his accusers were not met at bar. *See Muttoni v. State*, 25 S.W.3d at 307-308 (holding that the improper admission of hearsay violates an accused's constitutional right to confront and examine witnesses). Thus, the trial court erred in admitting the fax from Payne.

---

[2]Our court of criminal appeals has recognized that judicial opinions interpreting the Federal Rules of Evidence are helpful in interpreting our Texas Rules of Evidence. *Cole v. State*, 839 S.W.2d 798, 801 (Tex. Crim. App. 1990). This is so because our state rules are patterned after the federal rules. *Id.*

5

Having found that the trial court's decision was wrong, we must now determine whether it caused appellant to suffer harm. In doing so, we turn to Rule 44.2 of the Texas Rules of Appellate Procedure. Through it, the Court of Criminal Appeals directed us to reverse the judgment if the error was of constitutional dimension and we are unable to hold, beyond reasonable doubt, that it did not contribute to the conviction. TEX. R. APP. PROC. 44.2(a). This requires us to assess whether "there was a reasonable *possibility* that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion . . . ."[3] *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000) (emphasis supplied). In performing this task, we gauge the error's potential impact in light of the other evidence and circumstances appearing of record. *McCarthy v. State*, No. 73,350, 2001 WL 1575803 (Tex. Crim. App. December 12, 2001). This does not mean that if some other evidence exists upon which the verdict can be founded the error was harmless. *Id.* Indeed, the independent evidence of guilt must be overwhelming before it can ameliorate the mistake. *Wesbrook v. State*, 29 S.W.3d at 119; *Muttoni v. State*, 25 S.W.3d at 308. With this said, we turn to our analysis of whether the error at bar was harmful.

Incremental to establishing appellant's culpability for the theft was proving that the pumps belonged to Hyseco. As depicted in the testimony of one or more witnesses, pumps of this ilk were not unique. Many companies made identical items. Indeed, one

---

[3]We do not read the Court of Criminal Appeals as saying that but for the improperly admitted evidence, there must be no evidence which could have reasonably persuaded the jury to find guilt. If this were not so, then the mere fact that the verdict enjoys the support of legally sufficient evidence would be determinative. Yet, we have been told time and time again, through cases such as *McCarthy* and *Wesbrook*, that the mere existence of some independent evidence supporting guilt is not enough reason to hold error harmless.

witness viewed the units as common. So, in effort to establish that they belonged to Hyseco, the State had a representative of Hyseco, Richard Wagoner, testify about how Hyseco's items were actually unique and that ownership could be illustrated by their uniqueness.[4] The purportedly unique characteristics consisted of the color of the paint applied to the pumps, the foundry marks appearing thereon, the belief that Hyseco was one of only two company's that sold the pump in the United States, and the location of rivet holes used to mount the Hyseco tag.

As to color, the pumps were painted blue. However, the paint was applied by the manufacturer, not Hyseco. And, whether it was a shade unique solely to those items bought by Hyseco for resale, the record does not say. Furthermore, Hyseco was not the sole distributor of the particular items. At least one or two other businesses sold them. So, whether like pumps with similar coloring could have come from sources other than Hyseco remained disputed.

As to the foundry marks, they too were applied by the manufacturer, not Hyseco. Furthermore, each pump appeared to have the same marking. Whether that particular marking was unique to the units sold to Hyseco or was applied to every pump sold by the manufacturer to every other distributor also fails to appear of record. According to Wagoner, "[t]he manufacturer would have to answer that."

As to the number of entities that distributed the units in the United States on behalf of Cape Manufacturing, Wagoner testified that there were only two. However, the accuracy

---

[4]Evidence revealed that each pump had a unique serial number. However, Hyseco did not record the serial numbers of its pumps. So, the serial numbers were of no use in identifying the owner of the items.

7

of his conclusion was rendered suspect by the very hearsay evidence in question. Payne represented that Cape sold the pumps to three distributors.

As to the location of the rivet holes in the pump casings, Wagoner's own testimony rendered that evidence less than definitive. He testified that the tags placed on the items by Cape Manufacturing were done so in a specific manner. That is, the rivets were located a certain distance from each other, and only those pumps sold to Hyseco had rivets so spaced. Yet, under questioning, Wagoner said that he bought a pump from another Cape Manufacturing distributor, which distributor was located in Mississippi. Furthermore, the pump he acquired in Mississippi had rivet holes similarly spaced to those on his pumps. Because Wagoner had legitimately bought a pump with like holes from another distributor, it can hardly be said that the holes were unique to items sold by Hyseco.

Moreover, while those who bought the pumps from appellant concluded that they belonged to Hyseco, they did so on the basis of Wagoner's general description of same. They had no personal knowledge that Hyseco originally owned them. Nor could they so conclude from merely looking at the pumps. Testimony indicated that inspection of the items could have resulted in the identification of their manufacturer, but not their distributor. To this was added the testimony that several different companies made pumps identical to those allegedly stolen, that "lots of people sell them," that they are common pumps, and that the tags that appear on them are "about the same size."

From the foregoing, one can say that evidence of ownership by Hyseco (independent of that contained in the Payne hearsay letter) appeared of record. So too may that evidence be legally sufficient to support a finding of guilt. Yet, it was founded upon the conclusions of Wagoner regarding the uniqueness of the pumps his company

8

sold. And, as illustrated above, the evidence of their supposed uniqueness was short of overwhelming. Also, to quell any further dispute regarding ownership, the State expressly referred the jury, during closing, to the inadmissible hearsay letter of Payne. It cannot be denied that a manufacturer's statement that something is unique to items bought by a particular distributor has persuasive value. Given these circumstances, we are unable to conclude, beyond reasonable doubt, that the hearsay before us did not contribute to the jury's ultimate verdict, and this prohibits us from holding the error harmless.

Accordingly, the judgment is reversed and the cause remanded to the trial court.[5]

Brian Quinn
Justice

Publish.

---

[5]Having held as we did regarding the admission of exhibit 12, we need not consider appellant's other issues.