In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-07-594 CR


____________________



MICHAEL ALAN WEBSTER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 258th District Court


Polk County, Texas


Trial Cause No. 19,529






MEMORANDUM OPINION


 A jury convicted appellant Michael Alan Webster of delivery of a controlled
substance, and the trial court assessed punishment at twenty years of confinement. Webster
filed this appeal, in which he contends the evidence was legally insufficient to support his
conviction. We affirm.

The Evidence


 After a confidential informant contacted Detective Anthony Lowrie of the Polk
County Sheriff's Department, Detective Lowrie spoke with Constable Charles Clack to
formulate a plan to catch Tammy James, who he testified was a known pill dealer. Clack
agreed to work the sting operation undercover. The confidential informant contacted James
at her residence, and after Detective Lowrie fitted Clack with a covert recording device,
Clack and the informant traveled to James's residence. Upon their arrival, the confidential
informant introduced Clack to Webster, who was standing on the porch, and Webster invited
Clack and the confidential informant into the house. Clack and James began to discuss
Clack's purchase of pills from James, and Clack testified that during the discussion, Webster
was standing eight to ten feet away. Clack testified that Webster offered him a beer, and
Webster "stood there and was watching the living room area as we were conducting all this
conversation." James indicated that Webster would drive her to get the drugs. Clack
testified that he believed "Webster was there as a participant in the deal and . . . if I had
problems, that they was [sic] probably going to come from that area, him, to be specific. In --
in my opinion, he was the enforcer in the room. . . ." Clack testified that James "kept
referring to [Webster] as baby[,]" and "when she wanted him to do something, it was baby,
do this or baby, do that." Clack opined that "[n]o one in that room could deny knowledge
of what was going on." On cross-examination, Clack testified that Webster left the room
twice.

 At one point, some of the other people at the residence began staring at Clack, and he
feared his identity had been compromised. The individuals who were suspicious of Clack
spoke privately with Webster, and Clack assured the individuals that he was not a police
officer. Clack testified that Webster "calmed the situation." James and Webster eventually
left the residence to obtain the narcotics. When they returned, Webster returned to the
kitchen area, which was approximately eight feet away from Clack and James. Webster was
paying attention to what was occurring. James began counting pills for another individual,
and she then began counting pills for Clack, who paid her $300. Clack eventually purchased
the narcotics from James and then delivered them to Detective Lowrie. Clack also
transmitted the recording he made at James's residence to the District Attorney's office. The
defense offered portions of the recording at trial and questioned Clack regarding the various
voices captured on the recording.

 Officer Dallas Early of the Polk County Precinct Two Constable's Office eventually
stopped Webster and James, who were traveling in a vehicle driven by Webster. Officer
Early recovered from James five-and-a-half pills and the cash (identified by serial numbers)
that Clack had given her for the narcotics. Camille Stafford, a forensics scientist with the
Texas Department of Public Safety Crime Laboratory, testified that she analyzed the pills and
determined them to be hydromorphone in the amount of 2.40 grams.

 Tammy James testified that as a result of the sting operation, she pled guilty to
delivery of a controlled substance. According to James, she and Webster did not have an
agreement to deliver narcotics. James also explained that Webster never participated in a
negotiation with Clack or any other person to deliver drugs. In addition, James testified that
Webster was not present during her negotiations with Clack. James testified that Webster
drove her car because she was under the influence, and she was also experiencing mechanical
difficulties with her vehicle.

Webster's Issue


 In his sole issue on appeal, Webster contends the evidence was legally insufficient to
support his conviction. When reviewing the legal sufficiency of the evidence, we consider
all the evidence in a light most favorable to the prosecution to determine if any rational trier
of fact could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Swearingen
v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). We consider all of the evidence,
whether properly or improperly admitted, as well as both direct and circumstantial evidence. 
Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); Muttoni v. State, 25 S.W.3d
300, 308 (Tex. App.--Austin 2000, no pet.). The jury is the ultimate authority on the
credibility of witnesses and the weight to be given their testimony. Penagraph v. State, 623
S.W.2d 341, 343 (Tex. Crim. App. 1981).

 The elements of the offense of delivery of a controlled substance are: (1) a person, (2)
knowingly or intentionally, (3) delivers, (4) a controlled substance. Tex. Health & Safety
Code Ann. § 481.112(a) (Vernon 2003). Delivery may be made through actual transfer,
constructive transfer, or an offer to sell. Tex. Health & Safety Code Ann. § 481.002(8)
(Vernon Supp. 2007). In this case, the jury was charged regarding the law of parties, which
provides as follows, in pertinent part:

 (a) A person is criminally responsible for an offense committed by the
conduct of another if:


 . . . .


 (2) acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to aid
the other person to commit the offense[.]


Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003).

 Evidence is sufficient to convict the defendant under the law of parties
where he is physically present at the commission of the offense, and
encourages the commission of the offense either by words or other agreement. 
The agreement, if any, must be before or contemporaneous with the criminal
event. To convict someone as a party to an offense, the evidence must show
that at the time of the offense the parties were acting together, each doing
some part of the execution of the common purpose. In determining whether
the accused participated as a party, the court may look to events occurring
before, during and after the commission of the offense, and may rely on
actions of the defendant which show an understanding and common design to
do the prohibited act.


Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985) (citations omitted).

 The jury heard evidence that during Clack's negotiations with James regarding the
purchase of narcotics, Webster was standing in the same room, eight to ten feet away, and
Webster was paying attention. In addition, Clack testified that he believed Webster was
participating in the drug deal as an "enforcer," and that Webster calmed the situation when
others present questioned Clack about whether he was a police officer. Furthermore, the jury
heard evidence that after Webster heard and saw the negotiations, he drove James to obtain
the drugs. Viewing the evidence in the light most favorable to the prosecution, we conclude
that a rational jury could have found the elements of the offense beyond a reasonable doubt. 
See Swearingen, 101 S.W.3d at 95. We overrule issue one and affirm the trial court's
judgment.

 AFFIRMED.


 _________________________________

 STEVE McKEITHEN 

 Chief Justice

Submitted on June 23, 2008

Opinion Delivered July 16, 2008

Do Not Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.