# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00528-CR

---

**Lewis Wheeler, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 331ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-22-904011, THE HONORABLE CHANTAL ELDRIDGE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Lewis Wheeler was convicted of continuous sexual abuse and was sentenced to fifty years' imprisonment. *See* Tex. Penal Code §§ 12.32, 21.02. On appeal, Wheeler contends that the trial court erred by allowing a forensic examiner to testify regarding statements made during a forensic examination. We will modify the trial court's judgment of conviction to correct a clerical error and affirm the judgment as modified.

## BACKGROUND

Wheeler met Mother and began dating her before moving in with her and her two young children: Amber and Allan.[1] When Wheeler moved in with the family, Amber was

---

[1] Because the complainant, her brother, and her boyfriend were minors when the alleged offense occurred, we will refer to them and to the complainant's mother by using pseudonyms. *See* Tex. R. App. P. 9.10 (defining sensitive information).

approximately five years old, and Allan was approximately three years old. After Wheeler and Mother dated for several years, the couple broke up, and Wheeler left the home. Several years later, when Amber was seventeen years old, she told her then boyfriend Harry Jones that Wheeler had raped her when he lived with her family. Jones told Amber that she needed to tell Mother about the abuse or that he would. After telling Jones about the alleged abuse, Amber ran away from home, and Jones told Mother about the abuse. Jones and Mother searched for and found Amber a few days later.

After Amber returned home, the police were called. One of the responding officers arranged for a forensic interview and a sexual-assault forensic examination, and Amber submitted to the interview and the examination. Following the interview and the examination, Wheeler was charged with continuous sexual abuse of a child, and a trial was held. During the trial, several witnesses testified, including Amber; Mother; Jones; Allan; Dr. Katherine Snyder, who was the forensic examiner; Shelby Duarte, who was the forensic interviewer; and Wheeler.

Jones testified that Amber told him that Wheeler had raped her. Next, Amber related that when Wheeler dated Mother, he would physically assault Mother regularly, and Amber stated that she was afraid that Wheeler would kill Mother. Amber testified that Wheeler began sexually abusing her when she was five years old and generally described the abuse as occurring a few times per month during the years that Wheeler dated Mother. While testifying, Amber also described specific incidents of abuse, including his groping her vagina, rubbing her vagina, inserting his penis into her vagina, performing oral sex on her, and forcing her to perform oral sex on him. Amber testified that each of those types of incidents happened more than once and that the incidents involving penetration caused her tremendous pain and resulted in injuries to

2

her genitals. Amber also related that Wheeler would sometimes give her a sleeping pill before the incidents.

In her testimony, Amber admitted that she had previously made a false allegation of sexual abuse against her father. When discussing why she made the allegation, she explained that she was being abused by Wheeler at the time but identified her father as the abuser instead because she was living with Wheeler, because she was afraid of Wheeler, and because Wheeler had already physically assaulted Mother and threatened to kill Mother and Allan if she said anything about the abuse. For these reasons, Amber testified that she did not feel comfortable identifying her real abuser but could identify her father whom she knew would never hurt her.

Next, Mother testified that Wheeler regularly assaulted her when she lived with him and that the violence occurred in front of Amber and Allan. Further, Mother related that Wheeler brandished and pointed a gun at her multiple times in front of her children. Moreover, Mother stated that Wheeler was alone with her children regularly because of her work schedule. In her testimony, Mother testified that when Wheeler was living with her and her children, she noticed that Amber started imitating sexual activity and engaging in other age-inappropriate behavior and asked Amber to explain her behavior. Mother recalled that after she asked Amber to explain why she was behaving in a sexual manner, Amber said that her father had abused her.

After Mother finished testifying, Allan was called as a witness. In his testimony, Allan related that Wheeler hit Mother and pulled a gun on her and that this abuse happened in front of Amber and him. Although Allan said that he never saw any sexual activity, he testified that he saw interactions between Wheeler and Amber that seemed suspicious. Specifically, Allan recalled that on two occasions he saw Wheeler in Amber's bedroom with Amber while she was undressed.

3

During a hearing held outside the presence of the jury, the State announced that it intended to call Dr. Snyder to testify regarding the forensic examination that she performed on Amber, including statements that Amber made during the exam. Wheeler objected to Dr. Snyder testifying on the ground that the testimony was inadmissible hearsay. At the hearing, Dr. Snyder explained that she was the medical director for the child-abuse-resource-and-education-team for a local hospital, that she had performed close to a thousand sexual-assault exams, and that those types of exams have a national standard by which they are performed. Concerning this case, Dr. Snyder recalled that she performed "a nonacute medical evaluation of" Amber, meaning that the exam occurred more than five days after the last alleged incident of sexual abuse and meaning that it was unlikely that there would be any physical evidence still present at the time of the exam.

Regarding the exam, Dr. Snyder testified that she obtained a medical history from Amber and Mother, that she also reviewed one of the investigating officer's summaries of Amber's forensic interview, and that during the exam Amber made statements indicating that Wheeler sexually abused her and threatened to hurt her and her family if she told anyone. Moreover, Dr. Snyder specified that obtaining a history helps her to know what symptoms and parts of the body might be involved and whether any present symptoms could be explained by the medical history. Additionally, Dr. Snyder related that the information gathered from the history is used for the "purposes of diagnosis and treatment" because it is used to make decisions regarding whether any testing needs to be done or any medications should be taken and to decide whether the patient should be referred to therapy or some other type of specialist. Concerning her ultimate conclusion, Dr. Snyder stated that she would testify that her diagnosis was that Amber's medical history was "consistent with child sexual abuse."

4

After considering the parties' arguments and Dr. Snyder's testimony, the trial court determined that Dr. Snyder could testify regarding the examination and the statements that Amber made during the examination. However, the trial court concluded that Dr. Snyder could not testify as an expert regarding her conclusion that Amber's medical history was consistent with sexual assault.

Following that ruling, Dr. Snyder later testified in front of the jury that she performed a forensic examination on Amber when Amber was seventeen years old. When discussing the examination, Dr. Snyder mentioned obtaining a medical history from Amber. Further, Dr. Snyder said that Amber revealed that Wheeler sexually abused her by inserting his penis into her vagina and her mouth, touching her vagina with his hand, making her touch his penis, and performing oral sex on her.

Additionally, Duarte testified that Amber agreed to attend a forensic interview and that during that interview Amber discussed different acts of sexual abuse committed against her by Wheeler. More specifically, Duarte related that Amber discussed Wheeler's groping her vagina, forcing her to perform oral sex on him, performing oral sex on her, and inserting his penis into her vagina. Further, Duarte recalled that Amber described the penetrative acts as causing her pain. In addition, Duarte testified that Amber stated during the interview that Wheeler threatened to hurt her family if she said anything about the abuse.

When the State rested, Wheeler elected to testify and admitted that he dated Mother for several years, that he lived with her and her children, that they would fight and argue a lot, and that he had been convicted of assaulting Mother more than once. However, he denied ever brandishing or aiming a gun at Mother and further denied ever engaging in any sexual activity with Amber.

5

After considering the evidence presented at trial, the jury found Wheeler guilty of the charged offense. Wheeler appeals his conviction.

## DISCUSSION

**Rule 803(4) Statement Made for Medical Diagnosis or Treatment**

In his issue on appeal, Wheeler contends that the trial court erred by overruling his objection and allowing Dr. Snyder to testify regarding statements Amber made during the examination. Although Wheeler contends that the trial court correctly prohibited Dr. Snyder from testifying as an expert regarding her "ultimate opinion," he asserts that allowing her "to parrot" Amber's "statements during the forensic exam . . . was improper." When presenting his arguments, Wheeler acknowledges that there is an exception to the bar against hearsay for statements made for medical diagnosis or treatment but argues that the exception did not apply because the examination was non-acute in nature and that, therefore, the exam was for investigative purposes rather than medical ones. Wheeler argues that the testimony did not contain sufficient indicia of reliability to be admissible. From the above, Wheeler asserts that because Amber was seventeen years old at the time of the examination, she was mature enough to realize that she was seeing Dr. Snyder as part of the investigation process rather than for medical treatment, particularly when she had already discussed the abuse with others. Relatedly, Wheeler argues that the trial court's decision to exclude Dr. Snyder's expert medical opinion about the abuse established that the medical treatment exception to hearsay did not apply. Stated differently, Wheeler contends that the trial court determined that testimony regarding Dr. Snyder's medical conclusion was inadmissible and should have similarly concluded that her testimony regarding statements used to

6

formulate that opinion were also inadmissible. Finally, Wheeler urges that the admission of Dr. Snyder's testimony harmed him.[2]

Appellate courts review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Under the Rules of Evidence, hearsay is defined as a statement that "the declarant does not make while testifying at the current trial or hearing" and that "a party offers in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801. Hearsay is generally inadmissible, *see id.* R. 802, but the Rules of Evidence provide that the following types of statements are excluded from the rule against hearsay: "A statement that . . . is made for—and is reasonably pertinent to—medical diagnosis or treatment . . . and . . . describes medical history; past or present

---

[2] In its appellee's brief, the State argues that Wheeler did not preserve for appellate consideration his argument regarding the testimony failing to have sufficient indicia of reliability. Essentially, the State reasons that the appellate arguments made in his brief do not comport with the objections made at the hearing. However, Wheeler did argue during the hearing that the testimony should not be admitted under the medical-treatment exception and presented several broad challenges to the admissibility of the evidence, including arguing that the testimony lacked a sufficiently reliable foundation for admission. Moreover, during the hearing, Wheeler questioned Dr. Snyder about the non-acute nature of the exam, about whether Amber might have been lying, about whether Dr. Snyder considered information from one of the investigating officer's reports, and about Amber's having several years to formulate a story. In light of the broadly worded objections and the nature of Wheeler's questioning, we will assume for the purpose of resolving this issue that the arguments have been preserved for appellate consideration.

symptoms or sensations; their inception; or their general cause." *Id.* R. 803(4). "For a statement to be admissible under this exception, the declarant must make the statement for the purpose of receiving medical treatment and the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *Barnes v. State*, 165 S.W.3d 75, 82 (Tex. App.—Austin 2005, no pet.). "[A] child's statements to a physician or other health care professional describing sexually abusive acts and identifying the abuser can be admissible under rule 803(4)." *Id.* Courts have held that statements given during a forensic examination can qualify for admission under Rule 803(4). *See San German-Reyes v. State*, No. 03-15-00432-CR, 2017 WL 2229873, at *11 (Tex. App.—Austin May 17, 2017, no pet.) (mem. op., not designated for publication); *Fahrni v. State*, 473 S.W.3d 486, 499 (Tex. App.—Texarkana 2015, pet. ref'd); *Franklin v. State*, 459 S.W.3d 670, 678 (Tex. App.—Texarkana 2015, pet. ref'd).

The exception contained in Rule 803(4) is based on the patient's selfish motive in receiving appropriate medical treatment, *Jones v. State*, 92 S.W.3d 619, 623 (Tex. App.—Austin 2002, no pet.), *overruled in part on other grounds by Taylor v. State*, 268 S.W.3d 571, 589 (Tex. Crim. App. 2008), and on "the assumption that the declarant appreciates that the effectiveness of the diagnosis or treatment may depend on the accuracy of the information provided," *Munoz v. State*, 288 S.W.3d 55, 58 (Tex. App.—Houston [1st Dist.] 2009, no pet.). The assumption that someone seeking medical treatment will tell the truth may not always apply to children because they may not fully understand "the need to be truthful with a physician." *See Barnes*, 165 S.W.3d at 82.

When addressing arguments similar to Wheeler's regarding whether an examination was an investigative one rather than one for medical treatment or diagnosis, this Court explained in *Barnes v. State* that although a physician was gathering evidence for possible

prosecution during a forensic examination, the physician "was also conducting a legitimate medical examination." *See id.* at 83; *see also Rodriguez v. State*, 280 S.W.3d 288, 290 (Tex. App.—Amarillo 2007, no pet.) (observing that "Texas courts applying the exception for hearsay statements established by Rule of Evidence 803(4) have held the presence of a parallel law enforcement purpose does not preclude application of the exception"). Further, this Court affirmed the admission of the examiner's testimony even though the abuse occurred years before the exam. *See Barnes*, 165 S.W.3d at 83; *see also Wells v. State*, 558 S.W.3d 661, 664, 668 (Tex. App.—Fort Worth 2017, pet. ref'd) (concluding that examination was done for medical diagnosis or treatment even though police officer referred victim for medical examination four years after abuse stopped). Essentially, this Court reasoned that the exception applied to the forensic exam even though the last abusive act occurred years prior because the exam would allow the examiner "to determine if the abuse was continuing or if the child suffered from a sexually transmitted disease" or other injury "as a result of the prior abuse." *See Barnes*, 165 S.W.3d at 83.[3]

---

[3] As support for his arguments on appeal, Wheeler refers to cases that do not address the medical-diagnoses-or-treatment exception or are otherwise distinguishable. *See Palmer v. Hoffman*, 318 U.S. 109, 112-15 (1943) (concluding that business's accident reports did not qualify under exception for reports prepared in regular course of business); *Cole v. State*, 839 S.W.2d 798, 810-13 (Tex. Crim. App. 1992) (on reh'g) (addressing admissibility under business-record and public-record exceptions); *Hardy v. State*, 71 S.W.3d 535, 537-38 (Tex. App.—Amarillo 2002, no pet.) (discussing admissibility under business-record exception); *Sneed v. State*, 955 S.W.2d 451, 455 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd) (concluding that "[s]elf-serving medical records, offered to show past physical injury and medication usage, created *after* arrest simply do not contain the substitutive circumstantial guarantees of trustworthiness necessary to bring the statements within Rule 803(4)" and that admission was "trumped by the bar on self-serving statements"). In addition, Wheeler points to cases from other states and from the eleventh federal circuit, but those cases are not binding authority on this Court. *See Jeffrey v. State*, 169 S.W.3d 439, 443 n.1 (Tex. App.—Texarkana 2005, pet. ref'd) (stating that Texas appellate courts are only obligated to follow decisions by higher Texas courts and United States Supreme Court); *State v. Cardenas*, 36 S.W.3d 243, 245 n.3 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (explaining that federal circuit "precedent is not binding on Texas courts").

Although the examination in this case, like that in *Barnes*, occurred years after the abuse allegedly stopped, Dr. Snyder explained that obtaining a medical history for Amber, including information about the alleged abuse, was for diagnosis and treatment to allow her to make decisions regarding what additional testing and treatment Amber might have needed, including ascertaining whether Amber should be referred to a therapist or some other specialist. Even though Dr. Snyder may have been gathering evidence for a possible prosecution, the trial court could have concluded based on her testimony that she was also conducting a legitimate medical examination and that the exception under Rule 803(4) applied. This is true even though the examination took place years after the abuse stopped because Dr. Snyder was seeking to ascertain whether Amber sustained injuries or required additional treatment because of the prior abuse. *See id.* Moreover, although Wheeler contends that Amber's statements during the examination should not be considered reliable because she likely knew that her statements were going to be used as part of the investigation and potential prosecution, nothing in the record indicates that Amber did not understand the importance of telling the truth during the examination. *See id.* (observing that it was not necessary for witness to have inquired into whether victim appreciated need to be truthful where victim was ten years old and was "sufficiently mature to be interviewed outside her grandmother's presence"); *see also Taylor*, 268 S.W.3d at 589 (explaining that for cases in which person is "on the physician's cold examination table" for diagnosis or treatment, it is "natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest" and that courts typically review record "not for evidence of such an awareness, but for any evidence that would

10

*negate* such an awareness, even while recognizing that the burden is on the proponent . . . to show that the . . . exception applies").

Turning to Wheeler's second set of arguments that the trial court's exclusion of Dr. Snyder's ultimate medical conclusion was inconsistent with its decision to allow Dr. Snyder to testify about the examination, we do not agree that the trial court's ruling was inconsistent with the purpose of Rule 803(4) or that the exclusion of some of Dr. Snyder's testimony established that the remainder of Dr. Snyder's testimony should have been excluded. When making its ruling, the trial court allowed Dr. Snyder to testify regarding statements Amber made during the examination but prohibited Dr. Snyder from testifying to her ultimate diagnosis that Amber's medical history was consistent with sexual abuse. This type of ruling is consistent with case law regarding the propriety of expert testimony in child-sexual-abuse cases and did not indicate that Amber's statements during the examination were not made for medical diagnosis or treatment. *See Salinas v. State*, 166 S.W.3d 368, 371 (Tex. App.—Fort Worth 2005, pet. ref'd) (explaining that forensic examiner could testify regarding results of physical exam but could not testify "that she had diagnosed sexual abuse based on the child's medical history"); *see also Yount v. State*, 872 S.W.2d 706, 711 n.8 (Tex. Crim. App. 1993) (noting that direct testimony regarding truthfulness of complainant in case involving sexual abuse of child is inadmissible).

In light of the preceding, we conclude that the trial court did not abuse its discretion by allowing Dr. Snyder to testify regarding Amber's statements made during the examination under Rule 803(4). *See Barnes*, 165 S.W.3d at 83.

Moreover, even if the trial court erred in admitting Dr. Snyder's testimony, we would be unable to conclude that the error harmed Wheeler. The erroneous admission of evidence is non-constitutional error. *Sandoval v. State*, 409 S.W.3d 259, 287 (Tex. App.—Austin 2013,

no pet.).  For non-constitutional errors, reviewing courts should only reverse the conviction if the error affected the defendant's substantial rights.  Tex. R. App. P. 44.2(b).  "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."  *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)).

Although Wheeler contends that he was harmed in this case because Dr. Snyder's repeating Amber's statements "added undue credibility" due to her role as a medical professional, it is well settled that the improper admission of evidence is rendered harmless when other evidence proving the same fact is properly admitted elsewhere or comes in elsewhere without an objection.  *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *Hitt v. State*, 53 S.W.3d 697, 708 (Tex. App.—Austin 2001, pet. ref'd).  Further, this Court has determined that any error from the admission of testimony from a sexual-assault nurse examiner was not harmful where similar evidence was introduced through the complainant and another witness.  *See San German-Reyes*, 2017 WL 2229873, at *12.

As set out above, prior to Dr. Snyder testifying, Amber testified regarding the sexual abuse and went into greater detail than Dr. Snyder, and Jones also testified that Amber told him that Wheeler had raped her.  Moreover, after Dr. Snyder testified, Duarte testified regarding statements Amber made during the forensic interview detailing the abuse.  Accordingly, even if Dr. Snyder's testimony should not have been admitted, the error would not have affected Wheeler's substantial rights because Dr. Snyder's testimony was duplicative of the testimony from other witnesses.  *Cf. Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986) (explaining that "[w]hether or not the testimony complained of was admissible as an exception to the hearsay rule is irrelevant.  If the fact to which the hearsay relates is sufficiently proved by other competent

12

and unobjected to evidence, as in the instant case, the admission of the hearsay is properly deemed harmless and does not constitute reversible error").

For these reasons, we overrule Wheeler's issue on appeal.

**Clerical Error**

In its appellee's brief, the State contends that there is a clerical error in the trial court's judgment of conviction. Specifically, the State notes that although the trial court assessed Wheeler's punishment, the judgment of conviction states that the jury determined his punishment. Accordingly, the State requests that this Court modify the judgment of conviction.

This Court has the authority to modify incorrect judgments when it has the information necessary to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). As pointed out by the State, the trial court assessed Wheeler's punishment, but the judgment of conviction incorrectly reflects that the punishment was assessed by the jury. Accordingly, we modify the judgment to show that the punishment was assessed by the trial court. *See* Tex. R. App. P. 43.2(b); *see also Gutierrez v. State*, No. 05-16-00755-CR, 2017 WL 2351346, at *1 (Tex. App.—Dallas May 31, 2017, pet. ref'd) (mem. op., not designated for publication) (modifying trial court's judgment to reflect that trial court, not jury, assessed defendant's punishment).

**CONCLUSION**

Having overruled Wheeler's issue on appeal and having modified the trial court's judgment, we affirm the trial court's judgment of conviction as modified.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Smith

Modified and, as Modified, Affirmed

Filed:   September 14, 2023

Do Not Publish